IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 74 ANNUITY FUND, et al. | : : : | CIVIL ACTION |
| Plaintiffs | : : | |
| v. | : : | |
| AMERICAN MECHANICAL, INC. | : : | |
| Defendant | : | NO.: 05-050 (SLR) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT UNDER FEDERAL RULE OF CIVIL PROCEDURE 55(b) AGAINST DEFENDANT AMERICAN MECHANICAL, INC.**

Plaintiffs, Plumbers and Pipefitters Local Union No. 74 Annuity Fund, Plumbers and Pipefitters Local No. 74 Health and Welfare Trust Fund, Plumbers and Pipefitters Local Union No. 74 Pension Fund (formerly the Pipefitters Local Union No. 80 Employers Joint Pension Trust Fund), Plumbers and Pipefitters Local No. 74 Apprenticeship Fund, Pipefitters Local Union No. 74 Educational/PAC Fund (respectively, "Annuity Fund", "Welfare Fund", "Pension Fund", "Apprenticeship Fund", "Education/PAC Fund", and, collectively, "Funds"), and Local Union No. 74 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("Union" and together with Funds, "Plaintiffs"), by their legal counsel, file this Memorandum in Support of their Motion for Judgment by Default.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant, American Mechanical, Inc. ("Company" or "Defendant"), is party to a collective bargaining agreement ("Agreement") with the Local Union No. 74 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and

155046-1

Canada, AFL-CIO (Ernsberger Declaration, ¶4). The Agreement provides for the payment of contributions to the Funds for time worked by or paid to employees who perform work covered by the terms and conditions of the Agreement. These contributions must be received by the Funds no later than the fifteenth (15th) day of the month following the month in which the work was performed. Failure to make these contributions, or to submit either incorrect or late remittance reports, results in a delinquency to the Funds. The Company is also bound to the Funds' Agreements and Declarations of Trust (Ernsberger Declaration, ¶4). Further, under the collective bargaining agreement and the Agreements and Declarations of Trust, the Funds have the right to audit the employer's payroll books and related records to determine that all required contributions have been paid (Ernsberger Declaration, ¶5).

The Funds' records reveal that the Company has failed to submit all contractually-required contributions (Ernsberger Declaration, ¶7(a) and (b) and Exhibits 3 and 4). The Company currently owes the Funds a total of at least $108,437.77 in contributions in the period July 2003 through January 2005 (Ernsberger Declaration, ¶7(a) and (b) and Exhibits 3 and 4). This includes $67,435.59 based on the remittance reports prepared by the Company and submitted to the Funds for July 2003 through February 2005 and an additional $41,002.18 based upon the results of an audit of the Company's payroll books and related records for the years 2003 and 2004 (Ernsberger Declaration, ¶7). Company also owes liquidated damages of $25,770.40 and interest of $23,903.46 on the unpaid contributions under the terms of the collective bargaining agreement and contribution collection rules adopted by the Funds' trustees (Ernsberger Declaration, ¶¶7(d) and 7(e).

In April 2005, the Funds audit the company's payroll records for the years 2003 and 2004 (Ernsberger Declaration, ¶7(b) and Exh. 3). That audit revealed that the Company substantially

underreported its contribution obligations (Ernsberger Declaration, ¶7(b) and Exh. 3). Plaintiffs, therefore, further request that they be permitted to perform an audit of the Company's payroll books and records for the period from January 1, 2005 to the date of the audit. The determination of an employee's eligibility for benefits is generally made based upon information contained on the remittance reports prepared by the employer and submitted to the Funds. An employer's liability to the Funds is also based on information contained in the report. When a remittance report is not submitted or, as in the present case, contains incorrect information, then a proper determination of eligibility and amounts due to the Funds is impossible. In such a case, the only means of obtaining the necessary information is to review the employer's payroll records. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The need for an additional audit in this case is especially important where gross underreporting has been documented.

Shortly after the complaint in this matter was filed, a settlement was negotiated with the Company (Ernsberger Declaration, ¶6 and Exh.2). In the Settlement Agreement, the Company agreed it owed $73,414.61 in contributions for December 2003 through December 2004 (See Exh. 2 at ¶1). The Company defaulted on its obligations under the settlement by failing to make the installment payments and has failed to cure the default after notice (Ernsberger Declaration, ¶6 and Exh. 6).

Plaintiffs filed the Complaint in the matter on January 31, 2005 and an Amended Complaint on February 10, 2005. The Defendant was served on February 15, 2005. The Defendant failed to file an Answer or responsive pleading within 20 days of service and, on or about April 13, 2005, Plaintiffs filed a Request to Clerk to Enter Default pursuant to Fed. R. Civ. P. 55(a).

# ARGUMENT

A. ENTRY OF A JUDGMENT AGAINST THE COMPANY FOR UNPAID CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND ATTORNEYS' FEES AND COSTS IS ENTIRELY APPROPRIATE

As a party to a collective bargaining agreement, Company is liable to the Funds not only under the collective bargaining agreement but also pursuant to federal law. Specifically, § 515 of ERISA, 29 U.S.C. §1145 provides:

> "Every Employer who is obligated to make contributions to a multiemployer plan...under the terms of a collectively-bargained agreement...shall make such contributions in accordance with such agreement..."

If the employer fails to make the contributions as required by the collective bargaining agreement and § 515, then the employer is subject to the provisions of § 502(b)(2) of ERISA, 29 U.S.C. §1132(g)(2). § 502(g)(2) provides for the mandatory award of the following:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of:

　(i) interest on the unpaid contributions, or

　(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (a),

(D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

The failure of the Company to comply with its contractual and statutory obligations results in a substantial adverse impact on the Funds' ability to meet their legal obligations. The

155046-1　　　　　　　　　　　　　　　　4

Funds are obligated by express mandates of the Employee Retirement Income Security Act of 1974 and by the documents and instrument by which they are administered to provide health and welfare benefits and pension credits to the Company's employees who are otherwise eligible to receive them. See, 29 C.F.R. 2530.200b-2(a)(1) and (2); <u>Central States, S.E. & S.W. Areas Pension Fund v. Admiral Merchants Motor Freight, Inc.</u>, 511 F.Supp. 38 (D.Minn. 1980), aff'd sub nom, <u>Central States, S.E. & S.W. Areas Pension Fund v. Jack Cole-Dixie Highway the Company, Inc.</u>, 642 F.2d 1122 (8th Cir. 1981). The Funds are required to provide these benefits and credits regardless of whether the Company makes the contributions. For example, if a covered employee of the Company has incurred a substantial hospital bill, the Welfare Fund is obligated to pay his medical expenses despite not receiving contributions from the Company. Similarly, a retiring participant is entitled to his promised pension benefit even if the Company does not pay its contractually-required contributions. The result is a significant drain on the resources of the Funds.

Additionally, when an employer fails to remit its contributions, the Funds lose the income that they could have earned by investing these contributions. Combining this loss of investment income with the requirement to continue to pay benefits will eventually affect the actuarial soundness of the Funds as well as deplete resources available to pay current benefits. Furthermore, the Funds incur additional administrative expenses as a result of an employer's failure to pay its contributions (Ernsberger Declaration, ¶8). These losses and added expenses significantly impair the Funds' ability to continue to provide benefits to not only the Company's employees, but to employees of companies that have complied with their contractual obligations.

Based on remittance reports the Company prepared and submitted to the Funds and an audit of the Company's records for 2003 and 2004, the Funds have determined they are owed at least $108,437.77 in contributions and $25,770.40 liquidated damages (Ernsberger Declaration, ¶7(a), (b) and (c)).[4] Interest on the unpaid contributions calculated to June 30, 2005 in accordance with the Funds' rules and regulations and applicable law is $23,903.46 (Ernsberger Declaration, ¶7(d)). The Funds have also incurred attorneys' fees and costs of $8,618.91 through June 30, 2005 (Rosenthal Declaration, ¶2 and Exhibit 8; Snyder Declaration, ¶3 and Exhibit 10).

Given the clear language of the collective bargaining agreement and obligations mandated by ERISA and in light of Defendant's failure to comply with its contractual and statutory obligations to submit timely, accurate remittance reports and contributions each month, and the irreparable harm which such malfeasance causes the Funds, this Court should not only enter

---

[4] In addition to the remedies set forth in ERISA, the Funds are entitled to an award based upon the contractual remedies set forth in the collective bargaining agreement and the Agreements and Declarations of Trust of the Funds. See, Carpenters Health and Welfare Fund of Philadelphia and Vicinity v. Building Tech, 747 F.Supp. 288, 297 (E.D.Pa. 1990). In Building Tech, the court, in reaching its decision, addressed, at length, the right of plaintiff funds to recover liquidated damages from a delinquent employer for unpaid contributions as well as those contributions that, although paid, were paid late. Specifically, the Court found that the parties' labor agreement set forth the conditions that would trigger the assessment of liquidated damages for failure to timely pay contributions. Id. at 296. The Court noted:

> [w]e can not believe Congress wanted to make things worse by voiding provisions of master agreements that penalized employers for late payments (footnote omitted). Without such protection, union workers covered by funds such as the Plaintiff Funds could be routinely deprived of substantial interest through deliberate patterns of late, last minute payments and there would be nothing the funds could do about it.

Id. at 297-298.

The liquidated damages in this case include $21,692.18 on unpaid contributions and

judgment in the Funds' favor but order Company to pay the contributions, contractual liquidated damages, interest and attorneys' fees and costs which it owes. This Court should also enter an injunction compelling the Defendant to comply in a timely manner with its ongoing reporting and contribution obligations. See, 29 U.S.C. §1132(g)(2)(E) (equitable relief). Laborers' Fringe Benefit Funds v. Northwest Concrete, 640 F.2d 1350, 1352 (6th Cir. 1981); Teamsters Local 639 - Employers Trust v. Jones & Artis Construction Co., 640 F.Supp. 223 (D.D.C. 1986); IBPAT Union and Industry Pension Fund v. Hartline-Thomas, Inc., 4 EBC 1199, 1200 (D.D.C. 1983). Such relief is entirely appropriate under the facts of this case.

### B. THE COMPANY SHOULD BE ORDERED TO PRODUCE ITS RECORDS FOR AN AUDIT AND PAY ANY ADDITIONAL AMOUNTS FOUND TO BE DUE AND OWING

The determination of an employee's eligibility for benefits is made based upon information contained on the remittance report. A proper determination of eligibility is not possible if remittance reports are not submitted or if they contain incorrect information as the audit of this Company's records for 2003 and 2004 clearly revealed.

In order to determine whether the contributing employer has made all required contributions and correctly reported hours worked and paid to its employers, the Funds have the right to review all of the employers records that relate to its contributory obligation. Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833 (1985). The employer has the obligation to maintain appropriate records and to permit the Funds' auditors to review these records upon request. Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 695 (6th Cir. 1994). The scope of records subject to review is broad,

---

$4,078.22 on contributions that were paid late.
155046-1                                                       7

and include those records the auditors reasonably deem necessary to conduct the audit. DeMarco v. C & L Masonry, 891 F.2d 1236 (6th Cir. 1989). In addition to the routine payroll records (e.g. time cards, cancelled payroll checks, payroll ledgers and payroll tax returns), they can include the general check registers and cancelled checks, general disbursements ledgers and federal and state corporate income tax returns. Id.

Given the substantial underreporting for the years 2003 and 2004 that was revealed by the audit of those years, an audit of 2005 is necessary in this case to determine the extent of any further delinquency. As has already been shown, the Company does not report all hours worked and an inspection of the Company's books is, thus, necessary to confirm the accuracy of the information on the remittance reports submitted by the Company. The employer's obligations under the Agreement and 29 U.S.C. §1145 mean nothing if the Funds' can not ensure compliance through an audit. The Court should and must order the Company to produce its 2005 records for an audit so that a precise determination of any additional amounts owed can be made. Upon completion of the audit, the Court should enter a further judgment against the Company for all additional amounts found to be due and owing under the Agreement and ERISA.


## CONCLUSION

Accordingly, in light of the clear statutory intent of ERISA, it is respectfully requested that this Court grant the Plaintiffs the relief requested in this Motion for Default Judgment.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

BY: _____
TIMOTHY J. SNYDER
Bar Identification No. 2408
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6645
Facsimile: (302) 576-3336
Email: tsnyder@ycst.com
Attorney for Plaintiffs

Dated: July 7, 2005

OF COUNSEL:

SANFORD G. ROSENTHAL
Jennings Sigmond, P.C.
510 Walnut Street, Suite 1600
Philadelphia, PA 19106
215-351-0611